IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **VENTAS REALTY, LIMITED PARTNERSHIP,** | ) ) ) | |
| Plaintiff, | ) ) | No. 12 cv 3107 |
| v. | ) ) | Judge Ronald A. Guzmán |
| **ALC CVMA, LLC,** *et al*, | ) ) | |
| Defendants. | ) | |

**ORDER**

Defendants lease properties from Plaintiff for the operation of state-licensed and highly regulated Alzheimer's care facilities, assisted living facilities, and/or senior independent living facilities in four different states. Each of the eight ALC Entities operates one such facility pursuant to a single "Amended and Restated Master Lease Agreement" with Ventas (the "MLA"). Collectively, the eight facilities have more than 600 beds for residents, all of whom are in need of various levels of care and attention. Recently, Ventas received notices that indicate several of the ALC Entities face state regulatory actions for violations of regulatory statutes or regulations governing the facilities. The notices identify numerous deficiencies with the respective ALC Entity's operations which are jeopardizing the health, safety, and welfare of the residents and which remain uncorrected despite previous citations from state health regulators. These regulatory actions threaten permanent revocation of the required operating permits, licenses, or other authorizations (the "Authorizations"), in which, pursuant to the MLA, Ventas has been granted a first priority security interest by the ALC Entities. It appears that three of the

eight facilities operated by the ALC Tenants, located in Georgia and Alabama, face state health care regulatory actions seeking to revoke the operating licenses of such facilities on account of violations of the applicable state's regulations governing the facilities. Consequently, Plaintiff seeks the expedited appointment of a receiver over the Ventas Portfolio "to prevent the loss of the vital permits and licenses necessary to maintain operation of the facilities and alleviate the threat to the health and safety of the residents posed by the ALC Tenants' current management of the facilities." (Pl.'s Mem. at 2.)

Unfortunately, it does not appear that the expedited appointment of a receiver by this Court will accomplish Plaintiff's stated aims. The Court's first consideration, of course, is the welfare of the residents/patients in these facilities. The various state regulations, including the licensing requirements, are obviously aimed at ensuring the welfare of the residents/patient's in these facilities as well. It is not surprising, therefor, as Defendants point out, that the licenses required to operate the three separate assisted living entities are *in personam* licenses, which may not be transferred or assigned. (Def.'s Mem. at 3); Ga. Code Ann. § 31-2-4(d)(8); Ala. Code § 34-2A-2(a); Pl.'s Verified Compl. Declaratory Relief, Schedule 7.3.  No doubt the state regulatory agencies want to ensure only qualified individuals are in charge of the day-to-day operation of these institutions. However, because the licenses cannot be transferred, appointing a receiver on an expedited basis will not, as plaintiffs claim, prevent the loss of the permits and licenses necessary to continue operating the facilities. In fact, just the opposite is likely to occur. If Defendants are replaced by court order as administrators of the facilities, they may very well lose their state licenses to operate the facilities. Moreover, any receiver appointed by the court to replace Plaintiff would have to be licensed by the appropriate State regulatory agency. Plaintiff

claims it has a qualified administrator waiting in the wings. But there can be no guaranty that the state regulatory agency will actually issue a license to the individual which plaintiff wants this Court to appoint on an emergency basis. Until licensed, any court appointed temporary receiver would be managing the assisted living facilities in violation of state law. Such an appointment would not be in the best interests of the residents/patients, nor would it achieve the Plaintiff's first stated goal of preventing the loss of the vital permits and licenses necessary to maintain operation of the facilities. Indeed, it appears that the only way to maintain such licenses is by complying with the State statutory and regulatory schemes.

   During oral arguments Plaintiff claimed that appointing a receiver now, before the Defendants' licenses are revoked by the State regulatory agencies, (which plaintiff posits may occur as early as next week) would avoid the chaos and confusion that have occurred in other cases where Defendants have had their licenses revoked. According to Plaintiff, in the order appointing a temporary receiver, the Court can mandate that Defendants cooperate in the transition from one administration to the other. But this could be accomplished with an order after the State agencies revoke Defendants' licenses and an approved manager is appointed. The Court is not convinced that the interests of the residents/patients or the preservation of plaintiffs' contractual rights, for that matter, will be advanced by appointing a receiver to run Defendants' businesses before the state regulatory agency has an opportunity to determine whether revocation is the appropriate course of action, and if so, who is qualified to take over the management of the facilities. An emergency receiver should be appointed only if there are no lesser steps that would suffice to preserve the status quo. The Alabama code appears to provide just such a lesser intrusion for accomplishing the same purpose. It provides that in the event an

assisted living administrator has his or her license revoked, the State Board of Health may issue an emergency permit to a person performing the functions of administrator in the assisted living facility for a reasonable period of time from the date of the license revocation. This process would have the advantage of taking place only after the state's regulatory agency has held a hearing and determined that Defendants' licenses should be revoked and after a determination of the qualifications of any applicant for an emergency permit.1 It would also have the advantage of avoiding undue interference by the federal courts with a state's statutory scheme for regulating the administration of assisted living facilities in order to ensure the safety and well-being of its residents.

The determination of Plaintiff's likelihood of success on the merits in this case necessarily involves an evaluation of Defendants' fitness to run the assisted living institutions in the states of Georgia and Alabama. However, it is clear that the appropriate community health departments in both of those states have either already finished, or are in the process of finalizing, their own investigations of Defendants' management of the facilities. The state agencies' examinations have likely been more thorough and comprehensive than what this Court could accomplish within the limited confines of an emergency motion for temporary injunctive relief. Since final determinations as well as appropriate remedial measures pursuant to those investigations are imminent, it is not necessary to employ extraordinary injunctive relief at this time. Nor would it be wise to take action that might disrupt or delay the finalization of these investigations. Should it become clear that the State processes are somehow inadequate to protect the health and safety of the resident/patient's and the Plaintiff's contractual rights,

---

1 Neither counsel was able to describe to the Court what the corresponding procedure would be in the State of Georgia.

nothing prevents the Court from revisiting the issue.

In general, the appointment of a receiver should be for the purpose of preserving or operating property pending a final disposition of the case; in other words, to preserve the status quo. The effect of appointing a receiver in the case at bar would be just the opposite. Rather than merely restraining Defendants from doing anything that would depreciate the property or waste Plaintiff's assets, the Court would be wholly replacing Defendants as the licensed administrators of the assisted living facilities. There is no guarantee that Defendants would be able to regain this status should the Court's initial determination of likelihood of success on the merits turn out to be wrong. Under state law it is likely the Defendants would have to be relicensed by the appropriate state agency before resuming administration of the assisted living units. Thus, given the particular facts of this case, the appointment of a temporary receiver on an emergency basis would likely cause a material change in the status quo.

The closing of the facilities either temporarily or permanently as well as any costs of transition from one administration to another are all easily compensable by an award of monetary damages and, thus, are not a basis for preliminary injunctive relief. During oral argument of its emergency motion Plaintiff contended however, without providing any proof, that it owns the rights to the names of the facilities that are being threatened with disciplinary action, and that the substantial prejudicial publicity associated with allegations of inadequate care of the elderly and disabled has resulted in damage to the reputation of the facilities involved. If so, Plaintiffs might be able to establish a likelihood of some irreparable harm.

However, section 37.4 of the MLA, while giving Plaintiff some rights to continued use of any names associated with the operation of a facility after termination of the lease or of tenant's right of possession, clearly states that the tenant, not the landlord, owns the names and that the landlord may continue to use the same only as described in the lease. To say that plaintiff owns the names of the various facilities is, therefore, a substantial exaggeration.

Furthermore, in balancing the harm to both sides, it appears that neither side has an advantage. The irreparable harm to Plaintiffs if damage to the reputation of the facilities' names is allowed to continue, is counterbalanced by the possible harm to Defendants' reputations in the industry if they are wrongfully removed from the management of several of their facilities because of baseless allegations of mismanagement as well as the diminution of the value of their interests as owners of the facility names.

The public good is a serious consideration in this case. There are actual human beings in need of care in these facilities. This is the Court's primary concern. Failure to remove an administrator that is not adequately providing for their needs would constitute a grave public harm. However, there are two state health agencies actively involved in investigating and, if necessary, correcting or removing Defendants as administrators if they are indeed failing to adequately provide for the needs of their patients. In fact, one of these agencies will be holding a hearing to consider revoking the Defendant's license in just a few days. These agencies whose investigators have expertise in this area, have gathered evidence, reviewed documents, interviewed witnesses, and are on the ground at the actual facilities, are much better situated to

make the determinations essential to ensure the health and safety of the residents/patients.

It is unclear what effect this Court's order, should it decide to grant Plaintiffs' motion, would have on the states' regulatory proceedings. But clearly the possibility for disrupting or even derailing the entire process exists. Why would a state agency go forward with the hearing to determine if a license should be revoked if this Court has effectively already removed the licensee from the premises and thus barred him from exercising the rights granted by the license? The Court is of the opinion that intrusion into the state processes which apparently are already unfolding in a timely manner would not be in the best interests of the public.

For the reasons given above, Plaintiffs' emergency motion for expedited appointment of a receiver is denied.

Dated: May 9, 2012

**SO ORDERED**  **ENTER:**

*Ronald A. Guzmán*
-----------------------------------------
**RONALD A. GUZMÁN**
**District Judge**