IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VENTAS REALTY, LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | No.:   12-cv-3107 |
| v. | ) ) | Judge Ronald A. Guzman |
| ALC CVMA, LLC, ALC GGMG, LLC, ALC HTIF, LLC, ALC PEDG, LLC, ALC TPCG, LLC, ALC WRWG, LLC, and ASSISTED LIVING CONCEPTS, INC., | ) ) ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW OF DEFENDANT ASSISTED LIVING CONCEPTS, INC. IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER PURSUANT TO RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants, ALC CVMA, LLC, ALC GGMG, LLC, ALC HTIF, LLC,

ALC PEDG, LLC, ALC TPCG, LLC, ALC TISSC, LLC, ALC TSKG, LLC, ALC

WRWG, LLC, and Assisted Living Concepts, Inc. ("ALC"), respectfully submit this

memorandum of law in support of their motion, pursuant to Rule 26(c) of the Federal

Rules of Civil Procedure, for a protective order striking two interrogatories, two requests

for production of documents, and a Rule 30(b)(6) deposition notice propounded by

plaintiff Ventas Realty, Limited Partnership ("Ventas").  These discovery requests seek,

in impermissibly broad terms, documents and information concerning a privileged and

confidential investigation conducted by ALC's Audit Committee.

## PRELIMINARY STATEMENT

ALC brings this motion to prevent Ventas, a landlord from which ALC leases eight assisted living facilities, from obtaining discovery into a privileged and confidential investigation being conducted by the Audit Committee of the ALC Board of Directors (the "Audit Committee"). As mandated by the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 78f, ALC, a public company with shares listed on the New York Stock Exchange, has established a confidential procedure by which employees can, in confidence, inform the Chairperson of the ALC Audit Committee of concerns regarding the propriety of ALC's accounting and public financial disclosure. The Audit Committee is specifically charged with ensuring the integrity of the company's financial statements, evaluating the company's internal controls, and reviewing any allegations of fraud or impropriety involving the company's accounting or financial reporting.

In early May 2012, a communication was received by the Audit Committee Chairperson expressing concerns regarding ALC's accounting treatment of its leases of the aforementioned eight properties from Ventas. Declaration of Alan Bell, dated June 4, 2012 ("Bell Decl."), at ¶ 4. Consistent with its responsibilities, the Audit Committee opened an investigation into "possible irregularities in connection with the Company's lease with Ventas." *Id.* at ¶ 5. The Audit Committee retained outside counsel—the New York law firm Milbank, Tweed, Hadley & McCloy, LLP—to advise and assist in the conduct of this investigation. *Id.* As required by the federal securities laws, ALC disclosed the existence of the investigation in a Form 8-K filing with the Securities and Exchange Commission on May 3, 2012.

On May 15, 2012, Ventas served on ALC discovery requests seeking (1) all documents in any way relating to the Audit Committee investigation and (2) narrative answers to interrogatories seeking detailed disclosure of the proceedings undertaken by the Audit Committee in furtherance of the investigation.

The discovery requests are improper for several reasons. **First**, they are a fishing expedition unrelated to the allegations of the First Amended Complaint. Ventas alleges that ALC breached the lease (1) by receiving from state regulators in Georgia and Alabama notices of revocation of its operating licenses for three of the assisted living facilities and (2) by failing timely to report to Ventas two fires at a fourth facility. Rather than propound discovery related to these claimed breaches, Ventas has served only the discovery requests seeking to disclose the work of the Audit Committee. The cases are legion that the federal rules of discovery do not authorize such fishing expeditions.

Although plaintiff's counsel has speculated that the "irregularities" mentioned in ALC's Form 8-K *might* relate to the health, safety and welfare of residents at one or more of the facilities ALC leases from Ventas or to the physical condition of one or more of the facilities,[1] that is not the case, and plaintiff's counsel has been told that, in writing. As shown in the accompanying Bell Declaration, the Audit Committee's investigation relates to allegations concerning ALC's accounting treatment of the Ventas

---

[1] When the parties were before the Court on May 17, 2012 on Ventas's motion for expedited discovery, the Court listened to Ventas's counsel's explanation regarding the ALC Form 8-K and then, understandably, asked, "What does this have to do with the cause of action?" (Tr. at 4:24-25) Ventas did not seek to justify these discovery requests on the ground that they sought documents or information relevant to the allegations of the First Amended Complaint. Instead, in alarmist fashion, and without factual support, Ventas announced that documents were being destroyed at one of the facilities and that it had "great concern" that the possible "irregularities [referenced in ALC's Form 8-K filing] relate to serious deficiencies in the operation of the assisted living facilities" and "may present a significant risk to the value of the properties and the health and safety of the residents." (*Id.* at 5:23-6:18)

lease. Bell Decl. at ¶ 4. It has nothing to do with the health, safety or welfare of the

residents, or with the notices of permit revocation and the fires at the Florida facility that

are the focus of Ventas's claims. *Id.*

   **Second**, the proceedings of the Audit Committee in furtherance of the

investigation are protected by the attorney-client privilege, and the work of its counsel—

including but not limited to interviews of persons with knowledge of ALC's accounting

treatment of the Ventas lease—is additionally protected by the attorney work-product

immunity. To date, the Audit Committee and its counsel have not waived either the

attorney-client privilege or work-product protection as to any aspect of the investigation.

Ventas's discovery requests therefore are improper and the Court should enter a

protective order prohibiting Ventas from propounding discovery into the Audit

Committee's investigation.

   **Third**, Ventas's discovery requests are also improper because they would

require disclosure of the contents of a confidential communication protected under the

Sarbanes-Oxley Act, and that disclosure would lead inevitably to revelation of the

identity of the person who directed the communication to the Audit Committee—a

violation of Sarbanes-Oxley. Under Sarbanes-Oxley, a publicly-held corporation must

establish procedures to receive complaints and/or expressions of concern regarding

accounting, internal controls or auditing matters, and those procedures must ensure

confidential treatment for all such complaints and/or expressions of concern. This task is

generally undertaken by the corporation's audit committee, as is the case with ALC.

Specifically, a corporation's employees must be able to bring to the audit committee's

attention, on a confidential and anonymous basis, concerns regarding what they believe to

be questionable accounting or auditing matters, or any gaps in a company's internal controls.

Here, in seeking disclosure of the substance of the Audit Committee's investigation and all documents relating thereto, Ventas's discovery requests would require ALC to reveal a confidential communication to the Audit Committee. Moreover, given the relative handful of persons within ALC involved in the accounting function with respect to the Ventas lease, disclosure of this communication would allow persons to deduce the identity of the individual who made the communication. Bell Decl. at ¶ 6. Disclosure of that person's identity would be a violation of Section 806 of Sarbanes-Oxley, which embodies the clear Congressional policy judgment to protect persons who communicate complaints or concerns about accounting and auditing matters to audit committees on a confidential basis.

## PROCEDURAL BACKGROUND

On April 26, 2012, Ventas filed the initial complaint in this matter. [Docket #1]. The Complaint sought a declaration that ALC had breached its obligations under the Ventas lease and forfeited its right to possession of the leased premises. The initial complaint alleged that ALC's receipt of notices of intent to revoke permits from state licensing authorities for three of the eight leased facilities constituted a violation of the Ventas lease.

On May 14, 2012, Ventas filed the First Amended Complaint. The amended pleading continues to allege a breach of the lease arising from ALC's receipt of notices of intent to revoke permits from state regulators, and also alleges that ALC breached certain other obligations under the Ventas lease, including ALC's purported

failure to notify and obtain approvals in relation to two fires at a leased facility in Florida.

The First Amended Complaint, which added ALC as a defendant, also alleges that ALC

breached its obligations under a Guaranty of Lease for the benefit of Ventas. The First

Amended Complaint expands the relief sought by Ventas to include monetary damages

and termination of the lease agreement. ALC has not yet filed a responsive pleading to

the First Amended Complaint.

In May 2012, ALC filed two Forms 8-K with the SEC. To the extent

relevant to this motion, the first Form 8-K, filed on May 3, 2012, disclosed that "the

Company's Board of Directors determined to investigate possible irregularities in

connection with the Company's lease with Ventas and retained counsel for such

purpose." The lease was identified as a "material contract" in ALC's prior filings with

the SEC. A second Form 8-K, filed on May 14, 2012, mentioned, but did not make any

additional disclosures relating to, the Audit Committee investigation.

On May 15, 2012, one day after filing its First Amended Complaint,

Ventas moved for expedited discovery with respect to the Audit Committee investigation.

[Docket #30]. Even though Ventas acknowledged that it did not know the actual subject

matter of the Audit Committee investigation, Ventas told the Court that its "worst fears of

irreparable harm to its property interests and to the health and safety of the residents are

materializing." Motion to Expedite, at 4. Attached to Ventas's Motion for Expedited

Discovery were discovery requests for interrogatories, documents and a Rule 30(b)(6)

deposition. Declaration of John A. Rothstein, Esq., dated June 5, 2012 ("Rothstein

Decl."), Exhibit A. Ventas sought to compel ALC to respond to these discovery requests

within seven days.

The two interrogatories in Ventas's First Set of Interrogatories request the disclosure of the "'possible irregularities' ALC is investigating in connection with the" Ventas lease and the "subject matter of the 'ongoing internal investigation'" referenced in the Form 8-K filed by the Company on May 3, 2012. Ventas's First Request for the Production of Documents, in the same vein, seeks the production of "[a]ll documents relating to the 'ongoing internal investigation'" disclosed in the Form 8-K, and "[a]ll documents relating to the 'possible irregularities' ALC is investigating in connection with the [Ventas lease]."

At the May 17th hearing, the Court denied Ventas's motion to require ALC to respond to Ventas's discovery requests within seven days. The Court specifically asked why Ventas's counsel could not seek discovery in the ordinary course based on the allegations of its complaint. In response, Ventas's counsel acknowledged that he lacked information tying the "possible irregularities" to the allegations of the First Amended Complaint. Instead, sounding alarms, he sought to justify this extraordinary disclosure by once again speculating that residents were at physical risk of harm. May 17, 2012 Tr. at 5-6. Rothstein Decl., Exh. B. The Court directed ALC to respond to Ventas's outstanding requests for interrogatories and documents within two weeks, making clear that ALC was authorized to assert any objections it believed to be appropriate. The Court stated that if Ventas desired to move to compel, any such motion would be directed to the Magistrate Judge for determination.

On May 31, 2012, ALC served its objections to Ventas's outstanding discovery requests. Those responses set forth the following objections:

The ALC Audit Committee is conducting a confidential investigation. The Audit Committee has not waived any applicable privilege or protection relating to its investigation, and the information and documents sought by the request are protected from disclosure by the attorney-client privilege, the work product-doctrine, and the critical self-evaluation privilege. The information and documents sought by the request are also protected from disclosure under the Sarbanes-Oxley Act, which obligates the Audit Committee to respect the confidentiality of certain types of communications it receives in the course of an investigation.

ALC further objects on the ground that the request is not predicated on the allegations of the Amended Complaint. The request seeks information and documents relating to the confidential and privileged investigation being conducted by the ALC Audit Committee. Such a request is overbroad and unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.

Rothstein Decl., Exh. C. In its interrogatory responses, ALC specifically re-confirmed what it had already told Ventas's counsel: "ALC voluntarily states that the investigation conducted by the Audit Committee does not relate in any respect to the health or safety of any of the residents at any of the facilities leased from Ventas Realty, Limited Partnership." *Id.*

On May 31, 2012, immediately after receipt of ALC's objections to its requests for interrogatories and documents, Ventas re-served its Rule 30(b)(6) deposition notice on ALC. Rothstein Decl., Exh. D. Continuing the wholesale fishing expedition into matters protected by privilege, and required to be kept confidential by statute, Ventas identified the topics for the Rule 30(b)(6) deposition to be (1) "[t]he 'possible irregularities' ALC is investigating in connection with" the Ventas lease; and (2) "[t]he subjects of the ongoing internal investigation." Ventas noticed the deposition for June 7, 2012, one week later.

The parties participated in a meet and confer conference regarding their disputes relating to the scope of permissible discovery. They were unable to reach agreement, and this motion follows.

## ARGUMENT

I. **The Court Should Grant A Protective Order Striking Ventas's Discovery Requests Relating To The Audit Committee Investigation**

A. **The Audit Committee's Investigation Is Privileged**

The law is well-settled that communications between counsel and a corporation's Board of Directors, or a committee thereof, for the purpose of rendering legal advice are privileged. *Upjohn v. United States*, 449 US. 383, 394-95 (1981); *Sandra T.E., et al. v. S. Berwyn Sch. Dist. 100, et al.*, 600 F.3d 612, 620 (7th Cir. 2009) ("Because the Sidley lawyers were hired in their capacity as lawyers to provide legal services—including a factual investigation—the attorney-client privilege applies to the communications made and documents generated during that investigation."). Similarly, interviews of employees conducted by counsel, and reports and memoranda prepared by counsel in connection with Audit Committee investigations are privileged from disclosure. *See Upjohn*, 449 U.S. at 394-95, 401; *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 427-28 (N.D. Ill. 2006); *see also* Fed. R. Civ. P. 26(3) (protecting against disclosure of attorney's mental impressions, conclusions, opinions or legal theories). Under the work-product doctrine, attorney notes prepared in the course of witness interviews and consultations with a client are protected from disclosure. *Sandra T.E.*, 600 F.3d at 621; *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996).

The Audit Committee investigation is privileged and confidential. Bell Decl. at ¶ 5. The Audit Committee has not waived any privilege or protection associated with its investigation. *Id.* Ventas cannot invade that privilege by raising speculative alarms, unsupported by any facts, that the investigation "might" relate to the state of the physical property or to the health or safety of residents at the leased facilities.

Nor is it the prerogative of Ventas to demand that ALC disclose the precise subject matter of the investigation. That information has never been disclosed, and the Audit Committee has the right to seek confidential legal advice with respect to a specific matter relating to the Ventas lease without having to disclose to Ventas or any other third party the precise subject on which it has sought legal advice. In this instance, disclosure of the subject matter of the investigation would communicate privileged information to which Ventas is not entitled.

**B.      Disclosure Of Confidential Communications From Employees To The Audit Committee Would Violate Sarbanes-Oxley**

Ventas's discovery requests are also improper because, in seeking all information and documents relating to the Audit Committee's confidential investigation, those requests would require the disclosure of the communication the Audit Committee received in confidence that triggered the investigation. The law prohibits ALC from disclosing such information and documents.

Section 301 of Sarbanes-Oxley requires audit committees of public companies to establish procedures for "confidential anonymous submission by employees of concerns regarding questionable accounting or auditing matters. 15 U.S.C. § 78f. In compliance with Sarbanes-Oxley, ALC has established a Code of Business Conduct and Ethics that sets forth detailed procedures by which employees may communicate with the

Audit Committee, on a confidential and anonymous basis, on subjects relating to the

preparation of the company's financial statements, its accounting practices and

procedures or its internal controls. Bell Decl., Exh. 2. Pursuant to these procedures, the

Chairman of the ALC Audit Committee received one such communication from an

employee. That communication expressly sought confidential treatment: "Please

consider this a confidential complaint under the Assisted Living Concepts, Inc. (ALC)

Code of Business Conduct and Ethics." Bell Decl. at ¶ 4.

In addition to providing for the submission of confidential and anonymous

communications from employees, Sarbanes-Oxley expressly prohibits companies from

taking any adverse employment action against employees who provide such information,

either to the SEC or to a corporation's Audit Committee. Section 806 of Sarbanes-Oxley

subjects companies to civil liability, and in some cases criminal liability, if they can be

shown to have taken retaliatory action against a whistleblower employee. 18 U.S.C.

§ 1514A. Sarbanes-Oxley also provides a civil right of action for employees of public

companies who believe they have been discharged or subjected to other adverse action

because they have provided information to supervisors or the government regarding

conduct they reasonably believe to violate securities laws. *Id.*

Section 806 reflects the clear Congressional policy judgment, underlying

Sarbanes-Oxley, that confidential communications from corporate employees remain

protected from disclosure. The Administrative Review Board of the Department of

Labor, the department charged with enforcing Section 806, has recently issued a decision

holding that disclosure of a whistleblower's identity may constitute "adverse action"

under Section 806. In *Menendez v. Halliburton Inc.*, ARB No. 09-002 (Sept. 13, 2011), a

Halliburton employee filed a confidential complaint regarding the company's revenue recognition practices with the SEC, which initiated an investigation. The employee later sent an email communication to Halliburton's audit committee of his concerns, believing his identity would be kept confidential in accordance with the company's policy. Halliburton's general counsel, however, transmitted the email from this employee to other executives, for the apparently innocuous purpose of ensuring that these executives preserved relevant documents in light of the pending SEC investigation. The general counsel's forwarding of the email had the effect of revealing the sender's identity, leading to the employee's isolation at work and the impairment of his professional opportunities. Notwithstanding the benign intent underlying the general counsel's conduct, the ARB held that the adverse consequences flowing from the disclosure of the employee's name were inextricably tied to the breach of confidentiality and were actionable under Section 806.

Here, the discovery requests propounded by Ventas would lead to the public outing of one or more employees who have participated in confidential communications with the Audit Committee or its counsel, including the author of the initial May 2, 2012 communication to the Audit Committee Chairperson. The number of ALC employees involved in ALC's accounting treatment of the Ventas lease is relatively small. Disclosure of oral or written confidential communications received by the Audit Committee would very likely allow others to deduce the identity of the author of the initial communication, and could potentially subject that individual to adverse consequences—exactly what Sarbanes-Oxley prescribes. Congress, in enacting Section 806 of Sarbanes-Oxley, has made clear that corporate employees are not to suffer any

adverse employment action, of any kind, as a result of having relayed concerns on a confidential basis to audit committees regarding possible wrongdoing.

## II. Ventas's Discovery Requests Are Objectionable Because They Are Not Tied In Any Respect To The First Amended Complaint's Allegations

As the accompanying Declaration of Alan Bell now makes clear, the Audit Committee investigation does not relate to the physical state of the facilities or the health, safety or welfare of any of the residents. Accordingly, the speculative assertions on which Ventas contended that it needed this discovery have now been shown to be meritless—utterly without substance.

In any event, Ventas has never had any entitlement to the discovery it seeks. The Federal Rules of Civil Procedure do not permit parties to a litigation to engage in broad fishing expeditions in the hope of discovering documents or information that might give rise to a claim against an adversary. *See, e.g., EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971-72 (7th Cir. 1996); *Todd by Todd v. Merrell Dow Pharm., Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991). Rule 26 authorizes a litigant to seek discovery regarding any "non-privileged matter that is relevant to any party's claim or defense." It does not authorize a party to seek discovery, unrelated to the specific allegations of its complaint, "on the chance" that there could be some interesting communications that might not be privileged. *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 U.S. Dist. LEXIS 109558 (N.D.Ill. Nov. 24, 2009).

Ventas's discovery requests run afoul of this cardinal rule of discovery. Each of its outstanding discovery requests—its interrogatories, its document request and its Rule 30(b)(6) deposition notice—seeks discovery untethered to any allegation of the First Amended Complaint. That pleading focuses on the revocation notices received

from state regulators for three facilities in Georgia and Alabama, and two purported fires at a fourth facility, in Florida. The pleading contains no allegations—none whatsoever—about the Audit Committee investigation. It is pure—and entirely erroneous—speculation on Ventas's part that the investigation, which in any event is privileged, relates to an issue relevant to one of the narrow factual claims asserted in the First Amended Complaint.

It is not an answer for Ventas to argue that it only wants to learn the subject of the Audit Committee's investigation so that it may determine whether the facts underlying the investigation are relevant. That shifts the burden of discovery in a manner not allowed by the Federal Rules. Ventas may propound discovery requests seeking information and documents relevant to its claims and defenses. But it is not appropriate for Ventas to raise speculative alarms about issues not before the Audit Committee, and then contend that those alarms justify its invasion of a confidential and privileged Audit Committee investigation process.

## CONCLUSION

For the foregoing reasons, the Court should issue a protective order striking Ventas's First Set of Interrogatories, its First Request for the Production of Documents, and its Rule 30(b)(6) Notice.

Dated this 5 day of June, 2012.

/s/ John A. Rothstein
John A. Rothstein
QUARLES & BRADY LLP
411 E. Wisconsin Ave.
Milwaukee, WI 53202
414-277-5351
John.Rothstein@quarles.com

Leonard S. Shifflett
ARDC # 2587432
QUARLES & BRADY LLP
300 N. LaSalle St. Suite 4000
Chicago, IL 60654-3406
312-715-5000
Leonard.Schifflett@quarles.com

**Attorneys for all Defendants**