IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENTAS REALTY, LIMITED PARTNERSHIP,　　　　　　　　　) ) ) Plaintiff,　　　　　　　　　　　　　　) ) ) v.　　　　　　　　　　　　　　　　　) ) ALC CVMA, LLC, ALC GGMG, LLC,　) ALC HTIF, LLC, ALC PEDG, LLC, ALC ) TPCG, LLC, ALC WRWG, LLC, and　　) ASSISTED LIVING CONCEPTS, INC.,　) ) Defendants.　　　　　　　　　　　　) | No.:　12-cv-3107<br><br>Judge Ronald A. Guzman<br><br>Magistrate Judge Sidney I. Schenkier |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF
THEIR MOTION FOR A PROTECTIVE ORDER PURSUANT TO
RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants, ALC CVMA, LLC, ALC GGMG, LLC, ALC HTIF, LLC, ALC PEDG, LLC, ALC TPCG, LLC, ALC TISSC, LLC, ALC TSKG, LLC, ALC WRWG, LLC, and Assisted Living Concepts, Inc. ("ALC"), respectfully submit this reply memorandum of law in further support of their motion, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a protective order striking two interrogatories, two requests for production of documents, and a Rule 30(b)(6) deposition notice propounded by plaintiff Ventas Realty, Limited Partnership ("Ventas").

**ARGUMENT**

Try as it might, Ventas cannot defend the propriety of its discovery requests into a privileged and confidential Audit Committee investigation unrelated to the allegations of the Amended Complaint in this action.

1. Ventas's opposition memorandum has abandoned the initial argument on which Ventas sought discovery into the ALC Audit Committee investigation. In its motion for expedited discovery and again at the May 17th hearing on that motion, Ventas argued that it needed discovery into the Audit Committee investigation based on speculative alarms that the investigation might be related to the physical condition of the properties or the health, safety, and welfare of the residents. That argument has now disappeared, and for good reason. In its opening set of motion papers, ALC submitted the declaration of Alan Bell, a member of the ALC Audit Committee, attesting, under the penalty of perjury, that the investigation has nothing to do with the health, safety or welfare of the residents or the physical condition of the facilities. ALC made the same representation in its responses to Ventas's interrogatory requests.

2. The only rejoinder Ventas can muster to Mr. Bell's declaration is that Ventas is not "required" to take his declaration at "face value." Putting aside Ventas's stubborn refusal to accept statements made under the penalty of perjury by Mr. Bell, a respected attorney admitted to practice in Canada, Ventas has not put forward *any* countervailing evidence to show that the ALC Audit Committee investigation relates to any of the subjects on which Ventas sought discovery in the first instance. Ventas's discovery requests should be struck on this ground alone.

3. Ventas's contention that the Court authorized it to serve the discovery requests that are the subject of this motion is correct, but only half the story. Not only did the Court refuse to order expedition on the timetable sought by Ventas, but the Court expressly allowed ALC to assert any objections to the pending discovery

2

requests ALC believed appropriate. Recognizing that ALC would likely assert objections regarding the propriety of the requests, and without passing on the merits, the Court stated that the matter would be referred to the Magistrate Judge for resolution, in the event Ventas sought to override the objections and compel responses.

4.  Ventas next argues, unpersuasively, that ALC cannot assert attorney-client privilege and work product immunity with respect to the Audit Committee investigation because ALC has not yet produced a privilege log. This argument puts the cart before the horse. Ventas cannot fault ALC for not having prepared a privilege log when ALC has filed the pending motion to *strike* the underlying discovery requests. Until that motion is resolved, and in Ventas's favor, Ventas should not be heard to complain that ALC has not produced a log. To put it mildly, it would be onerous to require ALC, as the price of being able to make a motion to strike patently improper discovery requests, to produce and update an extensive privilege log (which would contain hundreds of entries, and would expand daily as the investigation continues) on just two weeks' notice. During the parties' meet and confer process, ALC made the reasonable request that Ventas agree, under the circumstances, that ALC had no obligation to provide such a log; Ventas refused to do so, specifically confirming its insistence that ALC prepare a log listing every communication relating to the Audit Committee investigation.

5.  In any event, Ventas wholly fails to rebut the assertion in Mr. Bell's declaration that the ALC Audit Committee investigation is privileged. Mr. Bell's declaration attested to the fact that ALC has retained counsel—the New York law firm Milbank, Tweed, Hadley & McCloy LLP—to advise and assist in the Audit Committee

3

investigation. This information was also set forth in the Form 8-K filed by ALC on May 3, 2012. Ventas does not even attempt to address the cases cited by ALC in its opening memorandum that such investigations, as a matter of regular course, are subject, not just to the attorney-client privilege, *see Upjohn v. United States*, 449 US. 383, 394-95 (1981); *Sandra T.E., et al. v. S. Berywn Sch. Dist. 100, et al.*, 600 F.3d 612, 620 (7th Cir. 2009), but also to the attorney work-product immunity, *see Sandra T.E., et al. v. S. Berywn Sch. Dist. 100, et al.*, 600 F.3d at 621; *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996).

6. Ventas's argument that ALC has not demonstrated that the Audit Committee investigation is protected by the work-product doctrine can be swiftly rejected. It is well understood by directors of publicly traded companies and their counsel that a public company's announcement of an internal investigation into accounting irregularities immediately exposes that company to the very real risk of litigation by regulators and stockholders. That is exactly what happened here. In the immediate aftermath of ALC's announcement in its May 3, 2012 Form 8-K of the commencement of the Audit Committee investigation, a prominent class action law firm issued a press release **the next day** citing ALC's Form 8-K filing and soliciting ALC shareholders to discuss their "claims" against ALC and their "rights as a potential class member or lead plaintiff." Rothstein Decl., Exh. A. There is no question that the Audit Committee investigation is being conducted "in anticipation of litigation" sufficient to be afforded the protection of the work-product doctrine. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992).

7. The authority relied upon by Ventas is equally unavailing. Ventas's opposition memorandum cites a number of cases for the unremarkable proposition that the attorney-client privilege and the work-product doctrine do not protect the "underlying facts" of an investigation. Ventas Br. at 7 (citing cases). But even if true, Ventas proffers no evidence to rebut Mr. Bell's declaration that the "underlying facts" of the Audit Committee investigation relate to possible irregularities in ALC's accounting with respect the Ventas lease. These facts are not the subject of the Amended Complaint. The overwhelming focus of that pleading is that ALC breached the lease (1) by receiving from state regulators in Georgia and Alabama notices of revocation of its operating licenses for three of the assisted living facilities and (2) by failing timely to report to Ventas two fires at a fourth facility. And, it bears emphasis that Ventas has already served numerous other discovery requests relating to the notices of revocation of the operating licenses; accordingly, these allegations do not justify disclosure of the Audit Committee investigation.

8. In the very last paragraph of its brief, Ventas argues for the first time that the discovery it seeks into the Audit Committee's investigation is somehow relevant because the Amended Complaint alleges, in a single sentence, that ALC did not "comply with their reporting obligations under Section 25" of the Ventas lease. Putting aside the fact that the Amended Complaint alleges no facts supporting this bare assertion, nothing stops Ventas from seeking discovery directly into the issue of ALC's compliance with its reporting obligations under Section 25 of the lease, and in fact, Ventas has served extensive discovery on ALC with respect to its reporting obligations—a fact that Ventas nowhere mentions in its opposition memorandum. *See* Rothstein Decl., Exh. B (Second

5

Set of Interrogatories, dated May 25, 2012, requesting, among other information, identification of each "compliance certificate" submitted by ALC pursuant to Section 25 of Ventas lease); Exh. C (Second Request for Production of Documents, dated May 25, 2012, seeking, among other documents, "all documents related to communications, related to any Compliance Certificates submitted to Ventas"). Speculation that the Audit Committee investigation might nevertheless relate to ALC's compliance with its Section 25 reporting requirements does not justify discovery into the "underlying facts" pertaining to the internal investigation itself.

9. Ventas also has no meaningful response to the showing in ALC's opening brief that Ventas's discovery requests are improper because they would require disclosure of a confidential communication protected under the Sarbanes-Oxley Act. Ventas cites no authority in support of its argument that the strong Congressional policy judgment protecting the identity of whistleblowers, embodied in Sections 301 and 806 of the Sarbanes-Oxley Act, can be overcome whenever a litigant seeks discovery into an internal Audit Committee investigation. We are confident no such authority exists.

10. Lastly, Ventas's contention that *Menendez v. Halliburton, Inc.*, ARB Case No. 09-002 (DOL Admin. Rev. Bd. Sept. 13, 2011), is not controlling because Ventas is willing to accept "redacted" documents on an "attorneys' eyes only" basis is meritless. First, as ALC demonstrated in its opening brief, redaction would not prevent the disclosure of the whistleblower's identity: given the relative handful of persons within ALC involved in the accounting function with respect to the Ventas lease, disclosure of this communication would allow persons to deduce the identity of the individual who made the communication. Second, there is no carve-out in Sections 301

6

and 806 permitting the identity of whistleblowers to be disclosed to a plaintiff's lawyer prosecuting claims on behalf of a third party against the whistleblower's employer. These provisions of the Sarbanes-Oxley Act are designed to encourage employees to report possible wrongdoing to audit committees, in confidence and without fear of retaliation. That principal statutory goal would be frustrated by a rule allowing confidential employee communications to be discovered by a plaintiff's counsel seeking to use that information for the benefit, not of the whistleblower, but of a contractual counter-party. At bottom, it is not plaintiff's prerogative to receive or use this information.

## CONCLUSION

For the foregoing reasons and the reasons set forth in ALC's opening memorandum of law, the Court should issue a protective order striking Ventas's First Set of Interrogatories, its First Request for the Production of Documents, and its Rule 30(b)(6) Notice.

Dated this 11th day of June, 2012.

/s/ John A. Rothstein
John A. Rothstein
US Dist. Ct. N. D. Ill Bar No.1004356
QUARLES & BRADY LLP
411 E. Wisconsin Ave.
Milwaukee, WI 53202
414-277-5351
John.Rothstein@quarles.com

Leonard S. Shifflett
ARDC # 2587432
QUARLES & BRADY LLP
300 N. LaSalle St. Suite 4000
Chicago, IL 60654-3406
312-715-5000
Leonard.Schifflett@quarles.com

Attorneys for all Defendants